UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**AVTONOM MARTUSHEV** and<br>**TATANIA MARTUSHEV**,<br><br>Debtors. | Case No. **09-60507-7** |
| **BABS JULIUS**,<br><br>Plaintiff.<br><br>-vs-<br><br>**AVTONOM MARTUSHEV** and<br>**TATANIA MARTUSHEV**,<br><br>Defendants. | Adv No. **09-00058** |

# MEMORANDUM OF DECISION

At Butte in said District this 9th day of April, 2010.

In this adversary proceeding, which is set for trial commencing on April 20, 2010, Plaintiff Babs Julius filed: (1) a motion partial summary judgment (Docket No. 13) seeking a determination that Defendants are liable for "actual fraud, construction fraud, or fraudulent and deceptive acts" involving the sale by Defendants of a home to Plaintiff and subsequent remodeling contract; and (2) a motion *in limine*. Defendants have filed objections to both

1

motions, and a statement of genuine issues of fact. Pursuant to Mont. LBR 7056-1(d), no oral argument hearing has been scheduled. Due to the shortness of time before trial, the Court deems these matters submitted and ready for decision. For the reasons set forth below Plaintiff's motion for summary judgment will be denied, and Plaintiff's motion *in limine* will be granted in part and denied in part.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334. The parties agree that this Court has jurisdiction of this matter and that this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Memorandum includes the Court's findings of fact and conclusions of law under FED. R. BANKR. P. 7052 (applying FED. R. CIV. P. 52) in adversary proceedings.

## FACTS

Plaintiff filed a complaint seeking exception from discharge under 11 U.S.C. § 523(a)(2)(A). The complaint avers three counts, Count One (Fraud), Count Two (False Representations) and Count Three (False Pretenses)[1].

Plaintiff filed on March 19, 2010, her motion for partial summary judgment, brief, and a Statement of Uncontroverted Facts (Dkt. 15) setting forth the following 31 alleged facts.

1. Babs Julius is a resident of Houston, Texas. Pl. Comp. , ¶ 8 (Aug. 17, 2009).

2. In 2000, Julius submitted an offer to purchase real property from Debtors/Defendants Avtonom and Tatania Martushev. *Id.* at, ¶ 9.

3. To assist Julius in conducting her due diligence to determine whether she

---

[1] The prayer of the complaint, Dkt. 1, at page 16 seeks judgment based on § 523(a)(4). However, § 523(a)(4) is not mentioned in Plaintiff's motion for partial summary judgment, nor is it mentioned or argued in the supporting brief (Dkt. 14). Therefore, this decision addresses only the arguments raised under § 523(a)(2)(A).

wanted to go through with the transaction, the Martushevs gave Julius a Seller's Disclosure Statement. The Seller's Disclosure Statement did "not identify any problems with the home, with the exception of disclosing that a cap over a vent in the roof was missing and it caused a "small leak." (Pl. Brf. for Sum. Jud., Exh. A.)

4. Based on the Seller's Disclosure Statement and based on previous deposition testimony by the Martushevs, the only reason this "problem" was disclosed was because it was discovered by Julius' independent home inspection. Pl. Comp. at ¶ 13.

5. Avtonom and Tatania Martushev, represented, through the Sellers' Disclosure Statement, and through verbal representations, that there were no problems with the home. *Id.* at ¶ 14.

6. In their Seller's Disclosure Statement, the Martushevs stated the house was up to code, the requisite permits for its construction had been obtained, and there were no outstanding issues with the home. *Id.* at [¶] 15.

7. The home had been built by the Martushevs, but they did not do anything to verify whether or not there were problems with the home. *Id.* at ¶ 24.

8. Based on the Martushevs' representations, Julius purchased the home. Pl. Comp. at ¶ 23.

9. In 2001, Julius traveled from Houston, Texas to vacation in her Bitterroot Valley home. When Julius entered the home she discovered the basement had flooded, there were worms, silt, and water all over the basement floor, and there was mold and mushrooms growing out of the walls in the basement. *Id.* at ¶ 30.

10. The Martushevs said the basement had flooded because there was a *defective water pipe* that had broke. This "defective water pipe" was not disclosed to Julius when she purchased the Property from the Martushevs. *Id.* at ¶ 31.

11. While the insurance company was busy working on the claim to remediate the mold and water damage, the Martushevs volunteered to assist in cleaning up the home, remediating the damage, and restoring

the home. Avtonom("Tom") Martushev represented that he was a general contractor and in fact, had actually built the home. Pl. Comp. at ¶ 32.

12. Mr. Martushev made additional representations about his proposed remodeling work:

> Q. You agreed to provide remodeling services, correct?
> A. Correct.
> Q. She agreed to pay you?
> A. Correct.
> Q. You provided the remodeling services, correct?
> A. Correct.
> Q. And she paid you.
> A. And she paid me, correct.
> Q. Did you agree to do a good job for her?
> A. Yes.
> Q. Did you agree to perform the work so that it would last?
> A. Yes.
> Q. Did you agree to perform the work without any defects?
> A. Yes.
> Q. Did you agree to perform the work in accordance with the building codes?
> A. I did not agree to that.
> Q. We've already talked about that you believed part of it was done to code and part of it was not, correct?
> A. Correct.
> Q. Did you agree to provide quality services?
> A. Quality service, yes.
> Q. Did you agree to provide quality materials?
> A. Yes.
> Q. Did you represent to Babs Julius that you had the knowledge necessary to perform the work that you did?
> A. I would say, yes.
> Q. Did you represent to her that you had the skills necessary to perform the work?
> A. Yes.
> Q. Did you represent to her that you were competent to

> perform this work?
> A. Yes.
>
> (Depo. Tom Martushev at 185:20 -187:10, Nov. 12, 2007,
> Pl. Brf. for Sum. Jud., Exh. B.)

13. Again, based on Mr. Martushev's representations, Julius agreed to enter into a construction contract with the Martushevs, and the work commenced. Unfortunately, the Martushevs did not have the expertise or skill necessary to do the construction work. Some of the most basic aspects of construction were overlooked, like adherence to minimum building standards, and the acquisition of building permits. For example, the Martushevs did not secure plumbing permits for either (a) initial construction of the home or (b) the subsequent restoration, remediation, and remodeling work he performed for Plaintiff under the subsequent contract. Pl. Comp. at ¶ 46.

14. The Martushevs were required by law to secure plumbing permits for all or part of this work. Pl. Comp. at ¶47.

15. The Martushevs did not secure electrical permits for either (a) initial construction of the home or (b) the subsequent restoration, remediation, and remodeling work performed for Julius under the contract, even [sic] they were required to do so by law. Therefore, there were no electrical or plumbing inspections performed by State inspectors. *ld.* at ¶¶ 48-50.

16. The Martushevs do not dispute that they did not build the home to any applicable "building code." Tom Martushev admits that he does not use the Building Code when he builds - instead he relies on his "common sense." (Depo. Tom Martushev at 135:6-15, Pl. Brf. for Sum. Jud., Exh. B.)

17. He then says that the work on Julius home, including its original construction and subsequent remodel, was not to any "industry standard," but was rather to "his standard." *(Id.* at 135:25 - 136:4, Pl. Brf. for Sum. Jud., Exh. B.)

18. Mr. Martuhsev's response begged the question: "What is your

standard?" His response was alarming: "What is my standard? My standard is common sense." *(Id.* at 136:5-7, Pl. Brf. for Sum. Jud., Exh. B.)

19. He said that it was his decision when to apply codes. *(Id.* at 139:21-23, Pl. Brf. for Sum. Jud., Exh. B.)

20. He said: "Well, codes, I use them when I think it's necessary, but if I don't think it's necessary, I don't use it. I use my common sense." (Depo. Martushev at 136:25 - 137:2, Pl. Brf. for Sum. Jud., Exh. B.)

21. In fact, Martushev admitted he did not even know what the International Residential Code ("IRC") was. *(Id.* at 43:12-18, Pl. Brf. for Sum. Jud., Exh. B.)

22. At his deposition, Mr. Martushev candidly admitted he did not build or remodel the subject home to building codes:

> Q. Did you or did you not build according to building codes?
> A. No.
> Q. You did not build according to building codes?
> A. To my common sense and my experience.

*(Id.* at 137:23 - 138:3, Pl. Brf. for Sum. Jud., Exh. B.)

23. However, when questioned extensively about the issue of codes, Mr. Martushev finally admitted that codes were important, and should be used when building a home. (Depo. Tom Martushev at 138:7 - 141:17;249:22-251:21, Pl. Brf. for Sum. Jud., Exh. B.)

24. Greg McCue, the Martushev's expert witness, affirmed that building codes were a minium standard, as did Steve Hutchings, the chief building inspector for Missoula County, and Darryl Byle, a professional engineer. *(See* Depo. McCue, 27:22 - 29:19, Jan. 20, 2009, Pl. Brf. for Sum. Jud., Exh. C; *See also,* Aff. of Darryl Byle, Pl. Brf. for Sum. Jud., Exh. D; and Aff. of Steve Hutchings, Pl. Brf. for Sum. Jud., Exh. E.)

25. Unfortunately, the Martushev's failure to secure a plumbing permit,

6

which would have required an inspection, resulted in the use of defective plumbing material in the home. They were required to secure a permit and to have an inspection. Their own expert said so. (Depo. McCue at 29:9-19, Pl. Brf. for Sum. Jud., Exh. C.)

26. In the summer of 2006, the cold-water supply line to one of the pedestal sinks in the master bathroom burst, spraying water throughout the master bathroom, causing significant flooding and water damage, both to the residence, and to personal property. To make a very long story short, this flooding has destroyed the house, because mold has grown from the top to the bottom. (Pl. Brf. for Sum. Jud., Exh. F.; Pl. Brf. for Sum. Jud., Exh. G.)

27. Had the requisite permits been obtained, had the minimum building standards been adhered to, and had the Martushev's representations about their abilities and their agreement with Julius been true, this would not have happened. The Martushevs' own metallurgist expert indicated that the pipes were not compliant with applicable building codes. (Depo. Vernon Griffiths, 33:8 - 40:1, Jan. 22, 2009, Pl. Brf. for Sum. Jud., Exh. H.)

28. Julius contacted the Martushevs via telephone, to repair these problems, but they refused to help. Pl. Compl. at ¶ 64.

29. Julius was then forced to hire independent consultants to ascertain the damages. During the course of several inspections, it was discovered that there were numerous defects and code violations with both the initial construction and with the new construction. *Id.* at ¶ 65.

30. After ascertaining the extent of the mold problem, and after ascertaining that the water leak was caused by negligent construction and negligent installation, Julius initiated a civil action in the Montana Twenty-First Judicial District Court. During the discovery process, Tom Martushev evaded questions about building codes. For example, when he was questioned about specific code violations found by Julius' expert witness, Darryl Byle, in his April 25, 2007 report, Mr. Martushev pled a lack of education about the construction process. (Tom Martushev Depo. at 149:7 - 152:19; 153:15 - 154:7; 155:21 -7, Pl. Brf. for Sum.

Jud., Exh. B.)

31. In fact, Tom Martushev admits that up until building this home, his construction experience had been limited solely to framing. *(Id.* at 14:19-23, Pl. Brf. for Sum. Jud., Exh. B.)

In response the Defendants filed a Statement of Genuine Issues of Material Fact (Dkt. 18) setting forth the following:

1. No representation was made by the Defendants to the Plaintiff that the house was built "to Code" or that plumbing or electrical permits were obtained or that the house was inspected during the construction process. No such language appears in the Seller's Disclosure form which is Exhibit A to Plaintiff's brief. There is no evidence of a verbal representation to this effect other than the complaint, and the defendants have denied that allegation in their answer. Defendants denied that [sic] allegations in the complaint that are identified in paragraphs 5, 6, and 8 of the Statement of Uncontroverted Facts.

2. The Martushevs lived in the house for 10 years and had no problem with it other than a minor roof leak. A. Martushev Depo. p. 246 ll. 2 - 6, p. 123 ll. 16 - 20. That is inconsistent with paragraph 7 of the Statement of Uncontroverted Facts.

3.14 - 16; p. 91 ll. The reason for the flood in 2001 was that a garden hose was connected to an outdoor faucet and the faucet was left open throughout the winter as a result of which the line froze and ruptured. A. Martushev Depo. p. 89 ll. 14 - 16; p. 91 ll. 7-22. With respect to paragraph 10 of the Statement of Uncontroverted Facts, which references only the Complaint, the Martushevs have denied the allegation in their Answer.

4. There is no causal relationship between any statement made by the Martushevs prior to the sale and the damage arising from the 2001 flood.

5. The only statement attributed by Plaintiff to Avtonom Martushev prior to the remodel work was that he was a general contractor and that he had the knowledge and skill to do the work the two discussed. Avtonom Martushev was in business for over ten years before the remodel work doing residential construction, particularly remodel work. Plaintiff's brief pp. 3 - 4. With respect to paragraph 11 in the Statement of Uncontroverted Facts which is based on paragraph 32 of the Complaint, the Martushevs have denied the allegations in their answer and specifically stated that Plaintiff asked Avtonom Martushev to remodel the house.

6. There were no plans for the remodel work. Plaintiff and Avtonom Martushev

8

would either talk on the phone, or the Plaintiff would go to the premises and talk to him in person about what to do. A. Martushev Depo p. 107 l. 19 – p. 109 l. 1. The Defendant exercised good workmanship in doing the remodel work. With respect to paragraph 13 and 15 of the Statement of uncontroverted facts, the Plaintiff cites only paragraph 46 of the Complaint, which the Defendants have denied. Paragraph 14 of the Statement of Uncontroverted Facts is a legal assertion, not a statement of fact. Paragraph 18 in the Statement of Uncontroverted Facts is argumentative and not a statement of fact except to the extent that it quotes from a deposition.

7. There is no evidence showing that the flexible tubing used on the sink in the master bedroom violated a building code. Plaintiff's exhibit H. Contrary to the implication in paragraph 25 of the Statement of Uncontroverted Facts, Defendant's expert did not say that material installed was defective or that obtaining a permit and doing an inspection would have prevented the brass tubing from leaking. Plaintiff's exhibit C, McCue depo. P. 29 ll. 9 – 19.

8. Plaintiff's exhibits F and G show limited damage to the house, not that it was totally destroyed.

9. There is no causal relationship between any statement made by Avtonom Martushev before beginning the remodel work and the damage caused by the second flood. Martushevs' metallurgist, Vernon Griffiths did not testify that the tubing used was not compliant with applicable building codes contrary to paragraph 27 in the Statement of Uncontroverted Facts.

10. With respect to paragraph 29 in the Statement of Uncontroverted Facts, the allegation is supported only by the complaint, which the Martushevs have denied.

11. Paragraph 30 of the Statement of Uncontroverted Facts is argumentative and does not set forth a material fact. Besides, negligence is not actionable under 523(a)(2)(A), and that paragraph actually supports entry of a summary judgment for the Defendants.

## DISCUSSION

**I. Summary Judgment**.

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The

9

proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback*

*& Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed

11

background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Plaintiff argues at pages 13-14 of her brief in support of summary judgment (Dkt. 14) that she is entitled to summary judgment under either the false representation or the actual fraud exception under § 523(a)(2)(A). She argues, without citation to authority, that although the elements for false representation are the same as those required for actual fraud, that false representation does not require a showing of intent to deceive, and so if the Court finds that she failed to establish the element of intent she is still entitled to an exception to discharge under the false representation exception of 523(a)(2)(A). That is simply an incorrect statement of case law in the Ninth Circuit construing § 523(a)(2)(A).

**II. § 523(a)(2)(A).**

It is well-settled that the Bankruptcy Code's central purpose is to provide a fresh start to the honest but unfortunate debtor. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, under certain circumstances, a creditor may seek to except from a debtor's discharge certain debts. *See* § 523(a). Nevertheless, consistent with effectuating the underlying purposes of the Bankruptcy Code, exceptions to discharge under § 523 are to be narrowly construed. *See Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). All three Counts of Plaintiff's Complaint seek nondischargeability pursuant to § 523(a)(2)(A)[2]. A creditor, in order to prevail, need only establish the elements of nondischargeability under 11

---

[2]The prayer adds § 523(a)(4).

U.S.C. § 523, by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. at 287-88.

To establish nondischargeability as a result of fraud under § 523(a)(2)(A)[3], courts in the Ninth Circuit employ the following five-part test:

(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
(2) knowledge of the falsity or deceptiveness of his statement or conduct;
(3) an intent to deceive;
(4) justifiable reliance by the creditor on the debtor's statement or conduct; and
(5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001*); American Express Travel Related Services Co. Inc. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996). The determination of nondischargeability under § 523(a)(2)(A) is a question of federal, not state law, and since the elements of § 523(a)(2)(A) mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the Restatement (Second) of Torts (1976) §§ 525-557A. *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443-44, 133 L.Ed.2d 351 (1995) ("'false pretenses, a false representation, or actual fraud,'. . . are common-law terms, and...in the case of 'actual fraud,'...they imply elements that the common law has defined them to include.").

---

[3] 11 U.S.C. § 523(a)(2)(A) reads:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

\* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The first three elements of § 523(a)(2)(A), when taken together, establish the element of intent to deceive, which the creditor must establish by a preponderance of the evidence. In other words, a creditor must establish that a debtor knowingly made a false representation, either express or implied, with the intent of deceiving the creditor. A debtor's failure to disclose material facts may constitute a fraudulent omission under § 523(a)(2)(A) if the debtor was under a duty to disclose *and* the debtor's omission was motivated by an intent to deceive. *Harmon*, 250 F.3d at 1246 n.4; *Citibank (South Dakota) v. Erashai (In re Eashai)*, 87 F.3d 1082, 1089-90 (9th Cir. 1996). In a two-party transaction, such as the case *sub judice* a creditor must "prove the elements of misrepresentation and reliance directly and by a preponderance of evidence." "We decline to apply the totality of circumstances test to two-party transactions." *In re Slyman*, 234 F.3d 1081, 1086 (9th Cir. 2000).

As to the remaining elements, a creditor sustains its burden of proof under § 523(a)(2)(A) if a court, after considering the facts and circumstances of a particular case, answers the following two inquiries in the affirmative: 1) did the creditor justifiably rely on the debtor's representation–reliance; and 2) was the debt sought to be discharged proximately caused by the first two elements–causation.

A creditor must establish that it relied on the false representations made by the debtor. *Field*, 116 S.Ct at 438. Such reliance need not be reasonable, but it must be justifiable. *Id*. As the Supreme Court held in *Field*, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id*. at 444 (quoting § 540 Restatement (Second) of Torts (1976)). This standard depends upon the knowledge and experience of the person to whom the representations were

14

made. As the Supreme Court in *Field* further explained:

> [A] person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses."

*Id*. (quoting § 541, Comment a., RESTATEMENT (SECOND) OF TORTS (1976)). Interpreting this standard, the Ninth Circuit Court of Appeals teaches: "Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense for fraud." *Apte*, 96 F.3d at 1322.

Finally, to prevail under § 523(a)(2)(A), a creditor must establish that a claim sought to be discharged arose from an injury proximately resulting from his or her reliance on a representation that was made with the intent to deceive. *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). "Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id*. at 604. Moreover, as the United States Supreme Court explained in *Field*, a court may turn to the Restatement (Second) of Torts (1976), "the most widely accepted distillation of the common law of torts" for guidance on this issue. *Field*, 116 S.Ct. at 443.

The RESTATEMENT (SECOND) OF TORTS (1976) explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a "substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which

15

requires a creditor's loss to "reasonably be expected to result from the reliance." § 548A.  *See also In re Creta*, 271 B.R. 214, 220 (1st Cir. BAP 2002).  In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud.  *Siriani v. Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. (In re Siriani),* 967 F.2d 302, 306 (9th Cir. 1992).

      The Plaintiff's argument that she is entitled to summary judgment for false representations even if intent to deceive is not established is contrary to the above controlling Ninth Circuit law.  She bears the burden of proof under all elements of § 523(a)(2)(A).

      Turning to the Plaintiff's burden under the instant motion for summary judgment, the Court finds that she has failed to show a absence of genuine issues of material fact for the elements of § 523(a)(2)(A) to establish fraud, false representations, and false pretenses.  The statements of uncontroverted fact relating to alleged misrepresentations by Defendants about their ability to remodel, their expertise, the condition of the home and quality of their work, are referenced in part to paragraphs in her complaint, including paragraphs 15, 24, 31, 46, 48, 49, and 50.  Defendants Statement of Genuine Issues, and their answer, deny all those averments of the complaint.  Under summary judgment standards reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party.  *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509.  With respect to whether there were false pretenses, false representations, or fraud, the Court concludes that Plaintiff has failed her burden under summary judgment to show their existence based on the conflicting pleadings.

      As to causation, Defendants included with their Statement (Dkt. 18) excerpts from Avtonom Martushev's deposition where at page 91 he testified that the cause of the flooding was

that an outside garden hose was left turned on for the winter, and it froze and froze into the house. Plaintiff's Statement of Uncontroverted Fact 10 stating the cause as a defective water pipe contains a citation to paragraph 31 of the complaint which was denied in the answer. Therefore there remains a genuine issue of material fact regarding causation of the flooding.

Having found genuine issues of material fact exist as to the existence of false representation, false pretenses, and intent to deceive, and causation, the Court concludes that the Plaintiff has failed her heavy burden for summary judgment under § 523(a)(2)(A) and the motion for partial summary judgment will be denied.

### III. Motion in Limine.

Plaintiff's motion *in limine* (Dkt. 10) seeks to prohibit Defendants from offering any exhibits or witnesses at trial. Her brief (Dkt. 11) argues that the Defendants have failed to submit initial disclosures as required under this Court's Order and Rule 26(1), FED. R. CIV. P. This Court's Order (Dkt. 9) set a deadline for initial disclosures by November 10, 2009. In addition, Plaintiff moves for the Court to prohibit Defendants from offering any expert witness testimony because they failed to identify experts or submit expert reports, which this Court required be done by December 9, 2009. Defendants argue in their objection and brief (Dkt. 19) that this case was close to trial and was fully discovered while in state court, and that Plaintiff has seen their expert reports.

This Court's ruling on a motion *in limine* is a matter for the Court's discretion, subject to review only for abuse unless the ruling precludes presentation of a defense, which is reviewed *de novo*. *United States v. Ross*, 206 F.3d 896-898 (9th Cir. 2000). This Court's scheduling Order (Dkt. 9) was entered after a telephonic, pretrial conference attended by the attorneys for both

sides. The Order states in part:

> The Court heard statements from the parties regarding scheduling matters, including the appropriate deadlines for the parties to prepare for trial. The parties shall comply with the schedule herein specified or be subject to sanctions, contempt, and expenses as provided by the Federal Rules of Bankruptcy Procedure, as may be requested by either party.

Defendants did not seek relief from the deadlines for initial disclosures or for disclosure of expert witnesses and their reports at the pretrial conference, and did not seek relief from this Court's Order. Defendants did not argue at the pretrial conference that initial disclosures and identification of expert witnesses and production of their reports were not required in this case because it had already taken place. Plaintiff did not agree to waive the deadlines. The Order set the deadlines, and Defendants failed to comply with knowledge that they would be subject to sanctions for failure to comply.

Accordingly, the Court will grant Plaintiff's motion *in limine* in part with respect to expert witness testimony and exhibits. In the exercise of its discretion, the Court deems that it would not be just or appropriate to prohibit the Defendants or other fact witnesses from testifying. The deadline for filing and exchanging lists of witnesses and exhibits is April 13, 2010, which has not expired, and that portion of Plaintiff's motion *in limine* will be denied at the Court's discretion.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above (1) denying Plaintiff's motion for partial summary judgment (Dkt. 13); and (2) granting Plaintiff's motion *in limine* (Dkt. 11) in part and denying in part; Defendants shall be prohibited from offering any testimony of expert witnesses at trial, but the motion *in limine* is denied to the extent it requests that the Court prohibit Defendants from offering exhibits or testimony of fact

witnesses at trial.

                    BY THE COURT

                    */s/ Ralph B. Kirscher*

                    HON. RALPH B. KIRSCHER
                    U.S. Bankruptcy Judge
                    United States Bankruptcy Court
                    District of Montana